No. 20-CV-410-TCK-FHM

---

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

---

**DR. ROBERT ZOELLNER, CLAY CLARK, JAMES J. DECRISTOFAR, ESQ., ARRON A. ANTIS, DEBBIE L. ANTIS, STEPHAN N. CURRINGTON, and JASON DANE MALIK BEASLEY,**

**Plaintiffs,**

**v.**

**MAYOR GEORGE THERON BYNUM IV, BRUCE DART, THE TULSA CITY COUNCIL, THE CITY OF TULSA, and THE TULSA DEPARTMENT OF HEALTH,**

**Defendants.**

---

## CITY OF TULSA'S MOTION TO DISMISS

---

Kristina L. Gray, OBA#21685
Senior Assistant City Attorney
Gerald M. Bender, OBA #14471
Litigation Division Manager
City Hall @ One Technology Center
175 East Second Street, Suite 685
Tulsa, Oklahoma 74103
918/596.7717 – Telephone
918/596.9700 – Facsimile
**ATTORNEYS FOR DEFENDANT CITY OF TULSA**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................................1

**ARGUMENT AND AUTHORITIES**.....................................................................4

    **I.    THE PLAINTIFFS LACK STANDING TO BRING SUIT**.................................5

    **II.  PLAINTIFFS' CLAIMS AS PLED FAIL TO STATE A CLAIM FOR RELIEF**
................................................................................................................5

        A.  <u>Plaintiffs' Have No Viable Claim Under the Ninth Or Tenth Amendment</u>.......8

        B.  <u>Plaintiffs' "Void For Vagueness" Fails As A Matter Of Law</u> .........................10

        C.  <u>The Plaintiffs' Fourth Amendment Claims Fail As There Has Been No "Seizure"</u>.......................................................................................12

        D.  <u>The City's Actions In Enacting The Mask Ordinance Were Rationally Related To A Legitimate Government Purpose</u>................................................13

**CONCLUSION** ...............................................................................20

## **TABLE OF AUTHORITIES**

### **CASES**

*In re Abbott,* 954 F.3d. 772, 783-785 (5th Cir. 2020)...................................................15, 16, 17, 18

*American Iron & Steel Inst. V. OSHA,* 182 F.3d 1261, 1277 (11th Cir. 1999) .............................11

*Ashcroft v. Iqbal,* 536 U.S. 662, 679 (2009) ...............................................................................4

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) ..............................................................................................................................................................4

*Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 123, 87 S. Ct. 1563, 1566, 18 L. Ed. 2d 661 (1967) ..........................................................................................................................11

*Brower v. County of Inyo,* 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L. Ed.2d 628 (1989) ..........12

*Brown v. Buhman,* 822 F.3d 11151 (10th Cir. 2016) .......................................................................5

*Clynch v. Chapman,* 285 F. Supp. 2d 213, 218-19 (D. Conn. 2003)............................................10

*Compagnie Francaise de Navigation a Vapeur v. Louisiana State Bd. Of Health,* 186 U.S. 380, 22 S. Ct. 811, 46 L. Ed. 1209 (1902) ..........................................................................................15

*Couture v. Bd. Of Educ. Of Albuquerque Public Sch.,* 535 F.3d 1243, 1250 (10th Cir. 2008) ....12

*Dias v. City & Cty. Of Denver,* 567 F.3d 1169, 1176 (10th Cir. 2009) ......................................5, 6

*Fang Lin Ai v. United States,* 809 F.3d 503, 514 (9th Cir. 2015)...................................................11

*Faustin v. City & County of Denver,* 268 F.3d 942, 948 (10th Cir. 2001) ......................................5

*F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012)..........................................10, 11

*Feltz v. Board of County Commissioners of Tulsa County,* 2020 WL 2393855...........................18

*Froehlich v. Wisconsin Dept. of Corrections,* 196 F.3d 800, 801 (7th Cir. 1999) ........................10

*Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 545, 105 S. Ct. 1005, 83 L. Ed.2d 1016 (1985) .......................................................................................................................19

*Gibson v. Matthews,* 926 F.2d 532, 537 (6th Cir. 1991)...............................................................10

*Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972)...............................................................10

*Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 25 S. Ct. 358, 49 L. Ed. 643 (1905) ................................................................................................................................15, 16, 17, 18, 19

*Lawton v. Steele,* 152 U.S. 133, 136, 14 S. Ct. 499, 38 L. Ed. 385 (1894).............................15, 17

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992) ..................................................................................................................................5, 7

*Marshall v. United States,* 414 U.S. 417, 427 (1974) ...................................................19

*New York v. United States,* 505 U.S. 144, 157, 112 S. Ct. 2408, 120 L. Ed.2d 120 (1992) ...........9

*Powers v. Harris,* 379 F.3d 1208, 1215 (10th Cir. 2004) ........................................13, 14

*Prime Healthcare Services, Inc. v. Harris,* 216 F. Supp. 3d 1096, 1124 (S.D. Cal. 2016) ..........11

*Prince v. Massachusetts,* 321 U.S. 158, 166-67, 64 S. Ct. 438, 88 L. Ed. 645 ...........................15

*Printz v. United States,* U.S. 898, 117 S. Ct. 2365, 2379, 138 L. Ed.2d 914 (1997)......................9

*Save Palisade FruitLands v. Todd,* 279 F.3d 1204, 1210 (10th Cir. 2002)....................................14

*South Bay United Pentecostal Church v. Newsom,* 140 S. Ct. 1613 (2020)...........................18, 19

*South Carolina v. Baker,* 485 U.S. 505, 511 n. 4, 108 S. Ct. 1355, 99 L. Ed.2d 592 (1988) ........9

*Stone v. City of Prescott,* 173 F.3d 1172, 1174—75 (9th Cir. 1999)..........................................9, 10

*Strandberg v. City of Helena,* 791 F.2d 744, 749 (9th Cir. 1986) .................................................10

*United States v. Jacobsen,* 446, U.S. 109, 131, 104 S. Ct. 1652, 1666, 80 L. Ed.2d 85 (1984)....13

*United States v. Mendenhall,* 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497 (1980) ...............................................................................................................................................12, 13

*Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S. Ct. 2258, 138, L. Ed.2d 772 (1997).........14

*Xponential Fitness v. Arizona,* CV-20-01310-PHX-DJH, 2020 WL 3971908.............................11

## **STATUTES**

21 O.S. § 3 (1999)....................................................................................................................6

## **RULES**

*Powers v. Harris,* 379 F.3d 1208, 1215 (10th Cir. 2004) ............................................................4

## **CONSTITUTIONAL AMENDMENTS**

U.S. Const. Amend. IV .......................................................................................................*Passim*

U.S. Const. Amend. V .......................................................................................................*Passim*

U.S. Const. Amend. IX .......................................................................................................*Passim*

U.S. Const. Amend. X .......................................................................................................*Passim*

U.S. Const. Amend. XIV ..................................................................................................*Passim*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) DR. ROBERT ZOELLNER | ) | |
| (2) CLAY CLARK, | ) | |
| (3) JAMES J. DECRISTOFARO, ESQ., | ) | |
| (4) AARON A. ANTIS, | ) | |
| (5) DEBBIE L. ANTIS, | ) | |
| (6) STEPHAN N. CURRINGTON, and | ) | |
| (7) JASON DANE MALIK BEASLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CV-410-TCK-FHM |
| | ) | |
| (1) MAYOR GEORGE THERON BYNUM IV, | ) | |
| (2) BRUCE DART, | ) | |
| (3) THE TULSA CITY COUNCIL, | ) | |
| (4) THE CITY OF TULSA, and | ) | |
| (5) THE TULSA DEPARTMENT OF | ) | |
| HEALTH, | ) | |
| | ) | |
| Defendants. | ) | |

## CITY OF TULSA'S MOTION TO DISMISS

Defendant City of Tulsa (the "City") respectfully moves this Court to dismiss Plaintiffs' claims for relief in accordance with Federal Rule of Civil Procedure 12(b)(6). In support of its Motion the City would show the Court the following:

### BACKGROUND

On July 15, 2020 the Tulsa City Council approved City of Tulsa Ordinance No. 24408 regarding face coverings and social distancing during the COVID-19 Pandemic Civil Emergency. [a copy of the Ordinance was attached to Plaintiff's Complaint at Doc. No. 1, p. 24]. The Ordinance includes various findings of facts including, _but not limited_ to the following:

- WHEREAS, on March 15, 2020, the Governor of the State declared an emergency caused by the impending threat of COVID-19 to the people of this State and the public's peace, health and safety which remains in effect today;

- WHEREAS, on Tuesday, March 17, 2020, the Mayor of the City of Tulsa, issued Executive Order 2020-02 declaring a civil emergency in response to the COVID-19 pandemic, which poses an imminent threat to health, safety and welfare in the City of Tulsa, and; . . .

- WHEREAS, as of the 14th day of July, 2020 there were 1,099 active cases (5,488 total cases diagnosed) of COVID-19 in Tulsa County; and . . .

- WHEREAS the United States Centers for Disease Control and Prevention (CDC) recommends that people wear cloth face coverings in public settings, particularly when other social distancing measures are difficult to maintain, and when around people who do not live in the same household; . . .

- WHEREAS, it is deemed necessary for the protection of the public health and safety of the City of Tulsa and its inhabitants to prevent the introduction and spread of the contagious disease COVID-19 preserve the peace, and provide civil defense and emergency functions. . .

[Doc. No 1, pg. 24-26]

The Ordinance requires that, subject to various exceptions, persons within the City of Tulsa wear face coverings when located within places of Public Service Areas of Places of Accommodation as defined by the Ordinances or in Education Buildings.  [Doc. No. 1, p. 28] Face coverings are also required when in a Public Setting where social distancing cannot be maintained.   The Ordinance allows for certain exceptions to the requirement that face coverings are to be worn.  The Ordinance specifically states as follows:

The following persons, locations and activities are exempt from this requirement:

1. Persons who fall into the U.S. Centers for Disease Control and Prevention's guidance for those who should not wear Face Coverings due to a medical or mental health condition or developmental disability;

2. Children under 18 years of age;

2

3. Restaurant patrons while they are eating or drinking;

4. Persons exercising in communal outdoor spaces, or persons walking or exercising with other persons from the same household in communal outdoor spaces, as long as Physical Distancing is maintained. Persons congregating in communal outdoor spaces with other persons not in their same household are required to wear Face Coverings when Physical Distancing is not maintained;

5. Settings where it is not practical or feasible to wear a Face Covering, such as dental services, medical treatments or while swimming;

6. Occupants in a personal vehicle, personal office. or similarly private space while other persons outside of the person's household are not present;

7. Private homes; and

8. Offices and workplaces that are not Public Service Areas where Physical Distancing between employees and other occupants can be consistently maintained during hours of operation.

[Doc. No. 1, p. 27]

***Importantly, the Ordinance states that there is no specific penalty for violation of the ordinance.***  Instead, a person refusing to wear a face covering in a location required by the Ordinance "shall be subject to prosecution under criminal trespass, disturbing the peace, disorderly conduct or similar offenses as circumstances warrant." [Doc. No. 1, p. 27]

On August 17, 2020 the Plaintiffs filed the present lawsuit alleging in vague and general terms that wearing face masks as required by the City Ordinance causes oxygen deprivation and creates "physiological damage".  While the Plaintiffs have not pled any fact-specific allegations involving any particular named Plaintiff, they generally contend that wearing face coverings has caused them, as a whole, or their employees to experience "migraine headaches, shortness of breath, and dizziness" and other issues such as nervousness and anxiety.  Plaintiffs also contend that the mask mandate causes harm to the

public as a whole by increasing crime and causing oxygen deprivation to persons wearing masks.

The Plaintiffs have pled claims under the Fourth, Fifth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution.  The Plaintiffs also claim the City's Ordinance is "void for vagueness".  The Plaintiffs request only declaratory relief and ask the Court to "find the Tulsa Mask Mandate unconstitutional, and invalidate, strike, and repeal the Tulsa Mask Mandate immediately". [Doc. No. 1, p. 22] On August 19, 2020, the Plaintiffs served the City of Tulsa in with a Summons and copy of the Complaint by way of the Tulsa City Clerk.

### ARGUMENT AND AUTHORITIES

At the Motion to Dismiss stage of a lawsuit, the Court must review the factual allegations in the Complaint "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  However, the allegations in the Complaint "must be enough to raise a right to relief above the speculative level . . ." *Id*.

As the Supreme Court instructed in *Ashcroft v. Iqbal*, 536 U.S. 662, 679, (2009), "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a) (alterations in original)). In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

I.      **THE PLAINTIFFS LACK STANDING TO BRING SUIT**

A party's standing to sue is a component of this Court's jurisdiction and as such, this Court is obligated to consider it as part of its Article III analysis.  "To demonstrate Article III standing, the plaintiffs must make three showings: first, that they have suffered an injury in fact which is concrete and particularized, and actual or imminent; second, that there is a causal connection between the injury and the challenged conduct; and third, that the injury is likely to be redressed by a favorable decision." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009) citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992). "As the parties invoking the jurisdiction of the federal courts, the plaintiffs have the burden of establishing standing". *Id.* (internal citations omitted)

In this case the Plaintiffs seek only prospective relief in that they ask this Court for a declaratory judgment and for the Court to "invalidate, strike, and repeal the Tulsa Mask Mandate immediately".  Plaintiffs have not sought any monetary damages in this lawsuit for any alleged past injuries.  To establish standing when asking for only prospective relief the Plaintiffs "must show a real and immediate threat that she will be prosecuted under this statute in the future." *Dias v. City & Cty. of Denver*, 567 F.3d 1169 (10th Cir. 2009) , quoting *Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir.2001); see also *Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016).

In *Dias*, the Tenth Circuit addressed a constitutional challenge to a Denver City ordinance regarding the banning of "pit bulls."  567 F.3d 1169 (10th Cir. 2009). The Court determined that the Plaintiffs, who did not reside in Denver and had no plans to return, were not subject to any credible threat of enforcement and therefore, lacked standing to challenge the City's ordinance. *Id* at 1176.  "To establish standing to seek prospective relief, a plaintiff

must show a continuing injury." *Id.* "In the context of a facial challenge to the constitutionality of a penal statute, a plaintiff alleges a continuing injury if there exists a credible threat of [future] prosecution thereunder." *Id.* at 1177.

In the case presently before the Court the Plaintiffs cannot establish any continuing threat of prosecution or penalty and therefore lack standing to sue.  The City's Ordinance is clear that "there is no specific penalty for violation of this ordinance." [Doc. No. 1, pg. 27] As such, a violation of the Ordinance is not a crime as is defined by Oklahoma law and the Plaintiffs are not subject to threat of prosecution. see 21 O.S. § 3 (1999).

The City's Ordinance was intended to empower businessowners to implement mask requirements which allow persons to be excluded or removed should they refuse to comply with mask requirements set by the business. Members of the public do not have an unrestricted right to frequent any business or restaurant they choose without abiding by certain restrictions as may be set by the business owner.  The mask ordinance simply facilitates the process of allowing business owners to implement mask requirements in their facilities.

While the Ordinance does not have any specific penalty for violation of the ordinance itself, it does state that a person refusing to wear a face covering in violation of the Ordinance "shall be subject to prosecution under criminal trespass, disturbing the peace, disorderly conduct or similar offenses as circumstances warrant." [Doc. No. 1, p. 27] In other words, if a business has a requirement that patrons wear masks to enter, and a patron refuses to comply, the business can, in its discretion, ask the person to leave.  If that person refuses to do so, the business can call the police and report the person as trespassing.   Trespassing, disturbing the peace,  and the other laws referenced in the Ordinance were available to

businesses prior to the enforcement of the mask ordinance.  The passage of the City's mask ordinance does not in any way enlarge the scope of these already existing ordinances. Accordingly, the Plaintiffs are not subject to on-going prosecution under the mask ordinance and thus, do not have standing to challenge the constitutionality of the same.

Further, the "injury" alleged by the Plaintiffs is that they have physical reactions to wearing a mask such as inability to breathe, dizziness, anxiety, etc.  The Plaintiffs allege in the general sense that not only have they suffered harm but that masks harm "the health of every single employee, citizen, and guest of Tulsa when wearing a face covering".  [Doc. No. 1, ¶5] An injury-in-fact sufficient to confer standing must be "concrete and particularized" and must impact "**the plaintiff** in a personal and individual way." *Lujan,* 504 U.S. at 560, 112 S. Ct. 2130 (emphasis added).  The Plaintiffs must allege specific facts that establish how they have been injured and cannot establish the injury in fact requirement of standing based on broad statements related to persons not parties to this suit.

Plaintiffs also ignore the fact that the Ordinance at issue includes an exception for persons who "fall into the U.S. Centers for Disease Control and Prevention's guidance for those who should not wear Face Coverings due to a medical or mental health condition or developmental disability."  As set forth above, Plaintiffs only have standing to bring suit if they can (1) allege an injury in fact, (2) there is a causal connection between the injury and the challenged conduct, (3) that the injury is likely to be redressed by a favorable decision. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61.

In this case, to the extent the Plaintiffs' claims of being unable to breathe or of becoming dizzy while wearing a mask are sufficient to allege an injury, they have failed to provide a causal connection between that alleged injury and the City's mask ordinance.

Initially, the Plaintiffs failed to plead any facts that would establish that any of these alleged injuries occurred as a result of any times where the mask ordinance was being enforced or they were required to wear a mask **because of the City's ordinance** rather than wearing a mask because of the requirement of a private business or some other reason.  It is the Plaintiffs' burden to plead facts that would establish standing.  Simply pleading in vague and general terms that masks cause them certain health issues, is not sufficient to link these issues to the City's ordinance.  They have not pled any facts that would show that they have been required to wear a mask because of enforcement of the ordinance or for fear of enforcement or penalty.

Further, the Plaintiffs overlook the fact that if they are truly suffering from health problems as they claim, the City's ordinance allows an exemption from the mask requirement.  Accordingly, the Plaintiffs cannot meet the requirements to establish they have standing to proceed with the suit against the City.

Since the Plaintiffs lack standing, the suit against the City should be dismissed with prejudice.

## II.  PLAINTIFFS' CLAIMS AS PLED FAIL TO STATE A CLAIM FOR RELIEF

Defendant City of Tulsa contends that the present suit should be dismissed as the Plaintiffs do not have standing and therefore, this Court lacks subject matter jurisdiction. However, in the event, this Court determines that the Plaintiffs have standing, their suit should still be dismissed as they have failed to plead claims for which relief can be granted.

### A.    Plaintiffs Have No Viable Claim Under the Ninth Or Tenth Amendment

The Plaintiffs contend in Counts I and III of their Complaint that the City's Mask Ordinance violates the Ninth and Tenth Amendments of the United States Constitution.  The

Plaintiffs seemingly fail to understand the purpose of these Constitutional Amendments or the rights conferred therein.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." U.S. Const. Amend X.  It confirms "that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S. 144, 157, 112 S. Ct. 2408, 120 L. Ed.2d 120 (1992). It encompasses "any implied constitutional limitation on Congress' authority to regulate state activities, whether grounded in the Tenth Amendment itself or in principles of federalism derived generally from the Constitution." *South Carolina v. Baker*, 485 U.S. 505, 511 n. 4, 108 S. Ct. 1355, 99 L. Ed.2d 592 (1988). "The Tenth Amendment stands as a limitation on federal power because it 'prohibits the exercise of powers 'not delegated to the United States.' " *Stone v. City of Prescott*, 173 F.3d 1172, 1174–75 (9th Cir. 1999), *quoting Printz v. United States*, 521 U.S. 898, 117 S. Ct. 2365, 2379, 138 L. Ed.2d 914 (1997).

"Thus, it is the power of the federal government which is constrained by the Tenth Amendment, ***not the power of the States***." *Stone*, 173, F.3d at 1175. (emphasis added) In the *Stone v. City of Prescott* case, registered voters of the City of Prescott filed suit after the City refused to issue a referendum petition to allow voters to challenge a City Ordinance about which voters disagreed. 173 F.3d 1172 (9th Cir. 1999) The Plaintiffs brought suit alleging the Ordinance and the failure to issue the referendum violated their rights under various Amendments of the United States Constitution including the Tenth Amendment.

On appellate review, the Ninth Circuit held that the Plaintiffs could not base their section 1983 claim on the Tenth Amendment "because it is neither a source of federal

authority nor a fount of individual constitutional rights." *Id.* at 1175. See also *Strandberg v. City of Helena*, 791 F.2d 744, 749 (9th Cir. 1986)("district court correctly determined the Tenth Amendment creates no constitutional rights cognizable in a civil rights cause of action.")  As such, any and all claims brought pursuant to the Tenth Amendment should be dismissed with prejudice.

Similarly, the Ninth Amendment does not confer a private right of action.  The Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir.1991).  "The Ninth Amendment is a rule of interpretation rather than a source of rights . . . Its purpose is to make clear that the enumeration of specific rights in the Bill of Rights is not intended (by the interpretive principle *expressio unius est exclusio alterius*) to deny the existence of un-enumerated rights." *Froehlich v. Wisconsin Dept. of Corrections,* 196 F.3d 800, 801 (7th Cir. 1999).

The Ninth Amendment is a rule of construction, not the source of individual rights and therefore, does not provide an independent basis for relief. *Clynch v. Chapman*, 285 F. Supp. 2d 213, 218–19 (D. Conn. 2003). Accordingly, any and all claims asserted under the Ninth Amendment should be dismissed with prejudice

**B.    Plaintiffs' "Void For Vagueness" Claim Fails As A Matter Of Law**

The Plaintiffs generally allege that the City's Mask Ordinance is so vague as to be rendered void. (Count VI of Plaintiff's Complaint, Doc. No. 1). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws

which regulate persons or entities must give fair notice of conduct that is forbidden or required."). "The vagueness doctrine incorporates two related requirements—fair notice and fair enforcement." *Xponential Fitness v. Arizona*, CV-20-01310-PHX-DJH, 2020 WL 3971908, at *10 (D. Ariz. July 14, 2020) (Plaintiffs challenged Arizona Governor's executive order closing gyms during COVID-19 pandemic). "The relevant inquiry is whether the law is 'so vague and indefinite as really to be no rule or standard at all,' or whether a person of ordinary intelligence could understand" what the law requires." *Id. quoting Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015)

If a law "imposes neither regulation of nor sanction for conduct," then "no necessity exists for guidance so that one may avoid the applicability of the law." *Id. quoting Boutilier v. Immigration & Naturalization Serv.*, 387 U.S. 118, 123, 87 S. Ct. 1563, 1566, 18 L. Ed. 2d 661 (1967) "Courts 'apply the void-for-vagueness doctrine outside of the First Amendment context only rarely.' " *Prime Healthcare Services, Inc. v. Harris*, 216 F. Supp. 3d 1096, 1124 (S.D. Cal. 2016) (quoting *American Iron & Steel Inst. v. OSHA*, 182 F.3d 1261, 1277 (11th Cir. 1999)).

In this case the Plaintiffs contend that the penalty section of the ordinance is unconstitutionally vague because it is unclear what the penalty for violation of the ordinance is. However, the ordinance clearly states that "there is no specific penalty for violation of this ordinance." [Doc. No. 1, p. 27]. This is written in plain language which is easily understood by members of the public and is in no way vague or hard to understand. The penalty section goes on to state that "[h]owever, persons refusing to wear a face covering into a Place of Public Accommodation, Educational Institution, or Public Setting as defined herein shall be subject to prosecution under criminal trespass, disturbing the peace,

disorderly conduct or similar offenses as circumstances warrant." [Doc. No. 1, p. 27].  Again, this language is clear and unambiguous that to the extent a person refuses to wear a face covering and such conduct violates existing sections of the penal code such as trespassing, disturbing the peace or disorderly conduct, they may be prosecuted under those sections. But the mask ordinance itself does not create any new penalties.

The mask ordinance is written in ordinary terms with a common sense meaning and therefore the Plaintiff has failed to assert a claim that the ordinance is void for vagueness.

**C.    The Plaintiffs' Fourth Amendment Claim Fails As There Has Been No "Seizure"**

Plaintiffs contend in Count V of their Complaint that the mask ordinance amounts to a seizure of their persons by requiring them to wear a face covering; however, this is a fundamental misunderstanding of what is required to meet the threshold for a Fourth Amendment Seizure claim. The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The first step in Fourth Amendment analysis in a case alleging an unreasonable seizure is to determine whether there was a seizure. *Couture v. Bd. of Educ. of Albuquerque Public Sch.*, 535 F.3d 1243, 1250 (10th Cir. 2008).

"A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L. Ed.2d 628 (1989) (citations omitted).  "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980)

In this case the Plaintiffs' have not pled any facts that would suggest that they have been detained, arrested, or that their movement has been restrained. The only thing they have alleged is the City enacted an Ordinance that requires persons to wear a piece of cloth over their face while they continue to go about their day-to-day activities in certain circumstances. This in no way results in a seizure or an arrest under the United States Supreme Court's interpretation of what is a "seizure" for purposes of the Fourth Amendment. The Plaintiffs do not allege that any police officer or government official forcefully placed a mask on them or detained them for failing to wear a mask. They do not even allege that they have been penalized or prosecuted for failing to comply with the Ordinance.

Further, even if the Plaintiffs could somehow establish that requiring masks was a "seizure", which the Defendant believe to be impossible, in order to plead a cognizable claim for relief under the Fourth Amendment the Plaintiffs must allege that any such a seizure was "unreasonable". See *United States v. Jacobsen*, 466 U.S. 109, 131, 104 S. Ct. 1652, 1666, 80 L. Ed. 2d 85 (1984). As set forth herein, the City's actions in enacting the mask ordinance have a rational basis to a legitimate government interest and therefore, any alleged "seizure" alleged by requiring the Plaintiff to wear one is reasonable. Accordingly, Plaintiff's Fourth Amendment claims fail as a matter of law and should be dismissed with prejudice.

**D.    The City's Actions In Enacting The Mask Ordinance Were Rationally Related To A Legitimate Government Purpose**

Plaintiffs allege in Counts II and IV of their Complaint that the City's Mask Ordinance violates their rights to Due Process and Equal Protection under the United States Constitution. "The Equal Protection and Due Process clauses protect distinctly different

13

interests." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) "On the one hand, the 'substantive component' of the Due Process Clause 'provides heightened protection against government interference with certain fundamental rights and liberty interests,'" *Id. quoting Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed.2d 772 (1997), "even when the challenged regulation affects all persons equally." *Id*. "In contrast, 'the essence of the equal protection requirement is that the state treat all those similarly situated similarly,' with its 'central purpose [being] the prevention of official conduct discriminating on the basis of race [or other suspect classifications,]" *Id*. (Internal citations omitted) "As such, equal protection only applies when the state treats two groups, or individuals, differently." *Id*.

However, while these are separate and distinct claims, the analysis in reviewing these claims is the same in that under both claims, a rational basis test is applicable in evaluating whether the City Ordinance enacted by the City was "rationally related to a legitimate government purpose." *Powers*, 379 F.3d at 1215 *quoting Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).

Plaintiffs allege in their Complaint that "[t]he Tulsa Mask Mandate has no real or substantial relation to protecting public health and in fact, harms the public, who is forced to wear face coverings in order to comply with the Tulsa Mask Mandate." [Doc. No. 1, ¶54] However, based on the pleadings and review of the ordinance itself, it is clear that the ordinance has a rational relation to the City's legitimate interests and thus, the Plaintiff's Due Process and Equal Protection claims should be dismissed.

The City's Ordinance is constitutionally sound and is grounded in longstanding legal tradition. The legal principle that the state (or municipality) has the discretion to reasonably interfere with individual liberties where the public interest (and safety) demands it is well

established in the longstanding history of the U.S. Supreme Court as well as in Federal and State courts across the country.

In its **April 7, 2020** decision in *In re Abbott,* 954 F.3d. 772, 783-785 (5th Cir. 2020), the U.S. Court of Appeals, Fifth Circuit, collected a historical compilation of decisions of the U.S. Supreme Court affirming and defining the established principle of emergency exercise of reasonable restraint on individual liberties to keep the public safe. *Id.* at 783-785.

Cases identified by the Fifth Circuit include *Lawton v. Steele*, 152 U.S. 133, 136, 14 S. Ct. 499, 38 L. Ed. 385 (1894). In *Lawton,* the U.S. Supreme Court recognized that "the state may interfere wherever the public interests demand it" and "discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests." In *Compagnie Francaise de Navigation a Vapeur v. Louisiana State. Bd. of Health,* 186 U.S. 380, 22 S. Ct. 811, 46 L. Ed. 1209 (1902), a case involving a Fourteenth Amendment challenge to the right of the State of Louisiana to quarantine passengers aboard a vessel, the Court held the State could quarantine passengers onboard the vessel even though they were healthy and denied the constitutional challenge. In the 1944 case of *Prince v. Massachusetts,* 321 U.S. 158, 166-67, 64 S. Ct. 438, 88 L. Ed. 645, the Court held the Constitutional right to the free practice of religion does not include the liberty to expose a community to communicable disease.

With the above cited cases in accord, the framework governing emergency exercise of authority during a public health crisis such as that currently faced by the City of Tulsa was firmly established One Hundred Fifteen (115) years ago by the United States Supreme Court in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 S. Ct. 358, 49 L. Ed. 643 (1905). In *Jacobson*, the Supreme Court addressed Jacobson's claims that the state's compulsory

vaccination law, which was enacted in response to a growing smallpox epidemic in Cambridge, Massachusetts, violated the Fourteenth Amendment. Mr. Jacobson's argument, much like the Plaintiffs herein, alleged the Commonwealth's compulsory vaccination law denied him the liberty "to care for his own body and health in such way *as to him seems best*." *Id.* at 26, 25 S. Ct. 358 (emphasis added). The Supreme Court soundly rejected this argument announcing in no uncertain terms that the "liberty secured by the Constitution… does not import an absolute right in each person to be, at all times and in all circumstances wholly freed from restraint." *Id.* Rather, ***"a community has the right to protect itself against an epidemic of disease which threatens the safety of its members.*** *Id.* at 27, 25 S. Ct. 358 (emphasis added). The Court went on to define a state's police power to combat an epidemic:

> [I]n every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect to his liberty may, at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand.

Id. at 29, 25 S. Ct. 358.

The Fifth Circuit in its April 2020 decision in *Abbott* noted; in analyzing the same principles earlier enunciated by the Supreme Court in *Jacobson;* that: "To be sure, individual rights secured by the Constitution do not disappear in a public health crisis, but the (*Jacobson*) Court plainly stated that rights could be reasonably restricted during those times." *Jacobson,* 197 U.S. at 29, 25 S. Ct. 358. The Circuit also found, unequivocally, that *Jacobson* narrowly defined the scope of judicial authority to review rights claims under the circumstances present herein as only available if:

> …a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has *no real or substantial*

> *relation to those objects*, or is, *beyond all question, a plain, palpable invasion of rights secured by fundamental law.*

*Id.* at 31, 25 S. Ct. 358 (emphasis added).

The Court in *Lawton* also described the parameters of the exercise of this discretion noting: "To justify the state in thus interposing its [police power] in behalf of the public, it must appear that 1. The interests of the public generally… require such interference; 2. that the means are reasonably necessary for the accomplishment of the purpose and are not unduly oppressive upon individuals." *Lawton*, 152 U.S. at 137, 14 S. Ct. 499.

The Court in *Jacobson* described the limits of review by a court of an exercise of the police power as limited to whether the exercise of the power by the state on behalf of its citizens **had been exercised in an "arbitrary, unreasonable manner"** *Id.* at 28, 25 S. Ct. 358, "or through arbitrary and oppressive" regulations. *Id.* at 38, 25 S. Ct. 358 (emphasis added). The Court recognized that review by a court might appropriately include review as to whether the exercise of power by the state should consider exceptions where necessary. Such an exception might include a medical exception to full compliance with the regulation "in extreme cases" where necessary to protect an individual who had a medical condition which would be exacerbated by the regulation. *Id.* at 38-39, 25 S. Ct. 358. Nevertheless, the Court in *Jacobson* made clear that Courts should not second guess policy decisions made by the government regarding the content and application of public health measures:

> **It is no part of the function of a court or a jury to determine which of two modes was likely to be the most effective for the protection of the public against disease. That was for the legislative department to determine in the light of all the information it had or could obtain.**

*Id.* at 30, 25 S. Ct. 358 (emphasis added).

The Court in *Abbott* summarizes very succinctly the limits of judicial review:

17

>    The bottom line is this: ***when faced with a society-threatening
> epidemic, a state may implement emergency measures that curtail
> constitutional rights so long as the measures have at least some
> "real or substantial relation" to the public health crisis and are not
> "beyond all question, a plain, palpable invasion of rights secured
> by the fundamental law…*** Courts may ask whether the state's
> emergency measures lack basic exceptions for "extreme cases," and
> whether the measures are pretextual – that is, arbitrary and
> oppressive. At the same time, however, courts may not second-guess
> the wisdom or efficacy of the measures.

*Abbott,* 954 F.3d 772, at 784-785, citing *Jacobson* 197 U.S. 11 at 28, 30, 31, 25 S. Ct. 358.

In a May 11, 2020 decision in *Feltz v. Board of County Commissioners of Tulsa County*, 2020 WL 2393855 (slip opinion) authored by the Honorable Claire V. Eagan, judge of the United States District Court for the Northern District of Oklahoma, Judge Eagan weighs in on the analysis offered by the Fifth Circuit. In that lawsuit, brought seeking to release inmates from the Tulsa County Jail due to the pandemic, Judge Eagan is foursquare in accord with the rationale and analysis of the Fifth Circuit in *Abbott* finding, in accord with *Jacobson,* that "constitutional rights may be reasonably restricted 'as the safety of the general public may demand.'" *Abbott* at 778, quoting *Jacobson*, 197 U.S. 11, 31 (1905). Judge Eagan found the plaintiff had identified no "right" not to be "distanced or quarantined ***during an international pandemic*.**" *Id*. at 14 (emphasis added).

Chief Justice John Roberts's invocation of *Jacobson* in a recent religious liberty case is a significant signal. In the May 29, 2020 decision on Petitioners Application for Injunctive Relief in *South Bay United Pentecostal Church v. Newsom***,** 140 S. Ct. 1613 (2020) (Mem), the Chief Justice affirmed the central position of *Jacobson: "*Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U. S. 11, 38 (1905). When those

officials "undertake to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Id*, at 1613, (citing) *Marshall v. United States*, 414 U. S. 417, 427 (1974).   Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* at 1613-1614*, citing Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545, 105 S. Ct. 1005, 83 L. Ed.2d 1016 (1985). In *South Bay*, Chief Justice Roberts himself recognized the extraordinary situation this nation is in: "The Governor of California's Executive Order aims to limit the spread of COVID–19, a novel severe acute respiratory illness that has killed thousands of people in California and more than 100,000 nationwide. At this time, there is no known cure, no effective treatment, and no vaccine. Because people may be infected but asymptomatic, they may unwittingly infect others." *Id*. at 1613.

When reviewing the City's Ordinance No. 24408 in the context of this clear legal precedent, it is obvious the City demonstrated compliance with longstanding requirements for implementation of emergency governmental action which may curtail constitutional rights to control the spread of disease. The City carefully weighed alternatives and consulted with medical experts from both the Federal CDC; State and County Health Departments and private practice in a public setting, subject to review and comment by the public prior to enactment of an Ordinance that recognizes exemptions, including medical exemptions where warranted, along with many others.

The guidance of the Ordinance includes practical definitions of terms; sets out the history of the pandemic and the approach of State and City in responding, in an incremental fashion, to the ebb and flow of the crisis. The City's Ordinance clearly has substantial relation to the

current public health crisis and is not, in any way, pretextual. Instead, the Ordinance represents a good-faith effort by the Mayor and the City's elected leaders on the City Council to address and attempt to arrest, the spread of COVID-19. Indeed, the City of Tulsa is in good company based upon decisions of the U.S. Supreme Court as well as the recent decisions of the Federal Circuit and District Courts identified above.

### CONCLUSION

Defendant City of Tulsa respectfully requests this Court enter an Order dismissing Plaintiffs' claims against it with prejudice as the Plaintiffs have no standing to bring suit. However, even if this Court were to determine the Plaintiffs have standing, as set forth herein, the Plaintiffs have failed to state a claim for which relief can be granted.

Respectfully submitted,

CITY OF TULSA, OKLAHOMA
a municipal corporation

DAVID E. O'MEILIA
City Attorney

By:    /s/ Kristina L. Gray
Gerald M. Bender, OBA #14471
Litigation Division Manager
Kristina L. Gray, OBA #21685
Senior Assistant City Attorney
City Hall @ One Technology Center
175 E. Second Street, Suite 685
Tulsa, Oklahoma 74103
Telephone (918) 596-7717
Facsimile (918)596-9700

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of September 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

I hereby certify that on the  9th  day of September 2020, I served the same document by:

 _X_ U. S. Postal Service              ____ In Person Delivery

____ Courier Service          ____ E-Mail

on the following, who are not registered participants of the ECF system:

Dr. Robert Zoellner
Clark Clark
James J. DeCristofaro
Aaron A. Antis
Debbie L. Antis
Stephen N. Currington
Jason Dane Malik Beasley
*Pro Se* Plaintiffs
Thrivetime Show
1100 Riverwalk Terrace
Jenks, OK 74037
(917) 783-3153

/s/Kristina L. Gray
 Kristina L. Gray